UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

CASE NO.: 5:23-cv-00167

ASHLEY M. BARBER,

    Plaintiff,

v.

I.Q. DATA INTERNATIONAL INC.,

    Defendant.
_____/

**DEFENDANT I.Q. DATA INTERNATIONAL'S
REPLY BRIEF
TO PLAINTIFF'S RESPONSE IN OPPOSITION
REGARDING IQ DATA'S
MOTION FOR SUMMARY JUDGMENT**

DEFENDANT, I.Q. DATA INTERNATIONAL INC. ("IQ DATA"), by and through undersigned counsel, hereby files this Reply Brief to PLAINTIFF'S Response in Opposition (docket entry 25) regarding IQ DATA'S Motion for Summary Judgment (docket entry 20), and requests the entry of judgment on all counts in favor of IQ DATA and against PLAINTIFF, ASHLEY M. BARBER. In support of this Reply, IQ DATA states as follows:

**I. REPLY TO PLAINTIFF'S ARGUMENTS**

Initially, PLAINTIFF has explicitly withdrawn and abandoned the alleged FDCPA violations premised on 15 USC §1692e and §1692f; accordingly, the

remaining alleged FDCPA violations are premised on 15 USC §1692d(5); and, the alleged violation of FCCPA §559.72(7) also remains. **See Opposition Brief, pgs. 2 and 9.** Additionally, it appears that PLAINTIFF – after receiving the transcripts of the telephone calls – has also implicitly abandoned the §1692d(2) claim which prohibits the use of obscene, profane, or language intended to abuse the debtor.

A.   **IQ DATA Did Not Violate 12 CFR §1006.14 because PLAINTIFF Initiated the Telephone Call on May 24, 2023 and Requested Additional Information Regarding the Outstanding Debt.**

As noted by PLAINTIFF on page 7 of the Opposition Brief, pursuant to 12 CFR §1006.14(b)(2)(i), a debt collector is presumed to have violated FDCPA §1692d(5) if the debt collector:

(A)   Telephones the debtor more than seven times within seven consecutive days; or,

(B)   After having a telephone conversation with the debtor, places a telephone call to the debtor within a seven-day period after such telephone conversation.

As set forth in the Motion for Summary Judgment, the log of telephone calls is as follows:

(a)   On February 2, 2023, IQ DATA telephoned PLAINTIFF three times; PLAINTIFF did not answer any of the calls;

(b)   On May 24, 2023, IQ DATA telephoned PLAINTIFF one time; a recorded conversation occurred;

(c)   On May 24, 2023, PLAINTIFF telephoned IQ DATA one time; a recorded conversation occurred;

(d)    On May 26, 2023, IQ DATA telephoned PLAINTIFF one time; PLAINTIFF did not answer the call;

(e)    On May 30, 2023, IQ DATA telephoned PLAINTIFF one time; PLAINTIFF did not answer the call;

(f)    On May 31, 2023, IQ DATA telephoned PLAINTIFF one time; PLAINTIFF did not answer the call; and,

(g)    On June 1, 2023, IQ DATA telephoned PLAINTIFF one time; a recorded conversation occurred.

PLAINTIFF argues that IQ DATA violated 12 CFR §1006.14(b)(2)(i) based on the telephone conversations on May 24, 2023.  That is, because a telephone conversation occurred on May 24, 2023, PLAINTIFF asserts that IQ DATA could not telephone PLAINTIFF again for a seven-day period; but, because IQ DATA telephoned PLAINTIFF on May 26 and May 30 – i.e., within the seven-day period – PLAINTIFF asserts that IQ DATA presumptively violated 12 CFR §1006.14(b)(2)(i).

IQ DATA disagrees.

There are exceptions to the seven-day period discussed above.  Pursuant to 12 CFR §1006.14(b)(3)(i), telephone calls are excluded and do not count if such telephone calls were placed with the debtor's:

> **[P]rior consent given directly to the debt collector and within a period no longer than seven consecutive days** after receiving the prior consent, with the date the debt collector receives prior consent counting as the first day of the seven-consecutive-day period.

Here, IQ DATA had an initial telephone conversation with PLAINTIFF on May

3

24, 2023 – transcript filed with Motion for Summary Judgment – and PLAINTIFF initiated a telephone call back to IQ DATA that same day – transcript filed with Motion for Summary Judgment.  During both calls, PLAINTIFF provided IQ DATA with consent to call her back if disconnected or with new information.  For example, on page 2 of the transcript of the telephone call initiated by PLAINTIFF on May 24, 2023, PLAINTIFF explicitly provided IQ DATA with consent to contact PLAINTIFF with new information regarding the debt:

> IQ DATA:   All right.  I'm going to remind you all calls are recorded.  This is an attempt to collect a debt by a debt collector.  Any information obtained is for that purpose only.  And, again, Ashley, I'm assuming you would want to be re-contacted in the event that we were disconnected **or needed to update you with any new information on your account, is that correct?**
>
> PLAINTIFF:   **Yes, ma'am**.

During this telephone call, PLAINTIFF asserted that she "was under the impression that [she] only owed $6,000;" but, she wanted proof regarding the debt in the amount of $12,000.

Accordingly, IQ DATA had PLAINTIFF'S consent to contact her with new information regarding the account.  Thus, IQ DATA'S telephone calls on May 26 and May 30 did not violate 12 CFR §1006.14(b)(2)(i) because IQ DATA was calling to inform PLAINTIFF that it was assembling the proof PLAINTIFF requested regarding the components of the $12,000 debt.  This is clear and evident

by the telephone conversation that occurred on June 1, 2023 – transcript filed with Motion for Summary Judgment – where IQ DATA indicated that PLAINTIFF was sent the proof of the $12,000 debt:

> IQ DATA: All right. So obviously, we're still looking for a resolution. Balance is $12,015.50. Proof was sent out a good five, ten days ago.

Accordingly, because PLAINTIFF provided IQ DATA with prior consent to contact her regarding proof of the $12,000+ debt, IQ DATA was entitled to telephone PLAINTIFF within the seven-day period regarding the components of the $12,000+ debt, pursuant to 12 CFR §1006.14(b)(3)(i).

**B.    To the Extent PLAINTIFF Argues that IQ DATA Violated §1692d by Asserting that the Amount of the Debt was $12,000+, Pursuant to <u>Cornette</u>, IQ DATA was Permitted to Reasonably Rely on the Information Received from the Creditor, i.e., that the Amount of the Debt was Valid, Until PLAINTIFF Stated Otherwise. PLAINTIFF Failed to Address this Argument; Accordingly, Apparently, PLAINTIFF has Conceded the <u>Argument.</u>**

If PLAINTIFF is arguing that IQ DATA violated the FDCPA and FCCPA by indicating that the amount of the debt was $12,000+, IQ DATA asserts that it is permitted to reasonably rely on the information that it received from the creditor until informed otherwise by the debtor, pursuant to <u>Cornette v. I.C. System Inc.</u>, 280 F.Supp.3d 1362 (S.D. Fla. 2017). In the Opposition Brief, PLAINTIFF does not address this issue. Accordingly, it appears that PLAINTIFF has waived or abandoned this argument.

**C. The Three Telephone Calls Between PLAINTIFF and IQ DATA Do Not Violate Section 1692d of the FDCPA as a Matter of Law; Accordingly, IQ DATA is Entitled to Summary Judgment on All Section 1692d Claims Premised on the Telephone Calls.**

As set forth in the Motion for Summary Judgment, IQ DATA asserts that the three recorded telephone calls do not violate the FDCPA as a matter of law. As discussed in the Motion for Summary Judgment, "Section 1692d is meant to provide a remedy for harassment, oppression, and abuse, **not bad manners**." Gnoinska v. Messerli & Kramer PA, 2012 WL 5382180 *2 (D. Minn. Nov. 1, 2012).

"[L]anguage that is **merely rude and unpleasant** does not violate the FDCPA." Kelemen v. Professional Collection Sys., 2011 WL 31396 *3 (M.D. Fla. Jan. 4, 2011) (numerous citations omitted). Moreover, simply because one is not treated "with the utmost kindness and respect" does not mean that the "words were harassing, oppressive, or abusive." Gnoinska at *2. Indeed, "any call from a debt collector may be presumed to be unwelcome . . . ." Martin v. Select Portfolia Serving Holding Corp., 2008 WL 618788 *6-7 (S.D. Ohio Mar. 3, 2008). In fact, "yelling and rude language, while disrespectful, does not by itself violate §1692d." Caulfield v. American Account & Advisors, 2013 WL 1953314 *2 (D. Minn. May 10, 2013) (quoting Majeski v. I.C. Sys. Inc., 2010 WL 145861 *4 (N.D. Ill. Jan. 8, 2010)).

Next, IQ DATA stresses that the three telephone calls between PLAINTIFF

6

and IQ DATA did not violate §1692d as a matter of law because the telephone calls did not concern: (1) a threat of violence; (2) the use of obscene or profane language; (3) the publication of a list of consumers with debt; (4) the advertisement for sale of such debt; or, (5) repeatedly calling the debtor in a harassing manner. See e.g. Gnoinska v. Messerli & Kramer PA, 2012 WL 5382180 *2 (D. Minn. Nov. 1, 2012).

Finally, on page 6 of the Opposition Brief, it appears PLAINTIFF is now claiming that her unique "circumstances made [her] more susceptible to abuse." However, this allegation appears nowhere in the Complaint; accordingly, the Court should disregard such an assertion since it has no factual support.

In summary, based on the argument and case law set forth in the Motion for Summary Judgment and this Reply, IQ DATA asserts that the Court has the authority to listen to the telephone calls and conclude as a matter of law that such calls did not violate the FDCPA.

**D.     IQ DATA Did Not Violate Fla. Stat. 559.72(7) of the FCCPA as a Matter of Law for the Same Reasons that IQ DATA did Not Violate the FDCPA Sections Discussed Above.**

As discussed in the Motion for Summary Judgment, the FDCPA and the FCCPA are very similar:

> both acts generally apply to the same types of conduct, and Florida courts must give "great weight" to federal interpretations of the FDCPA when interpreting and applying the FCCPA.

7

Read v. MFP Inc., 85 So.3d 1151, 1153 (Fla. 2nd DCA 2012); accord O'Neal v. Ward, 216 So.3d 664, 665 (Fla. 2nd DCA 2017) ("interpretations of the FDCPA are useful in interpreting the FCCPA"); see also Fla. Stat. 559.77(5) ("great weight shall be given to the interpretations of the . . . federal courts relating to the federal [FDCPA]").

And, as set forth above and in the Motion for Summary Judgment, because IQ DATA did not violate the FDCPA as a matter of law, IQ DATA also did not violate the FCCPA as a matter of law.

## II. CONCLUSION

Based on the arguments set forth above, IQ DATA asserts that it did not violate the FDCPA or FCCPA as a matter of law and requests the entry of Summary Judgment in its favor on all counts of the Complaint.

WHEREFORE, IQ DATA requests the entry of Summary Judgment in its favor on Counts I and II of the Complaint.

**Dated: January 8, 2024**               Respectfully submitted,

/s/ Douglas A. Kahle
Douglas A. Kahle, Esq.
Florida Bar No.: 0141194
E-Mail: dkahle@schwedpa.com
SCHWED KAHLE & KRESS, P.A.
11390 North Jog Road, Suite 102
Palm Beach Gardens, FL 33418
Phone: (561) 694-0070
Fax: (561) 694-0057
*Counsel for IQ Data International, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on **January 8, 2024**, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

                                         */s/ Douglas A. Kahle*
                                         Douglas A. Kahle, Esq.
                                         Florida Bar No.: 0141194
                                         E-Mail: dkahle@schwedpa.com

## CERTIFICATE OF WORD COUNT

The undersigned, DOUGLAS A. KAHLE, hereby certifies that this document was prepared on Microsoft WORD and pursuant to such program, the total number of words are 1,943, including the Certificates and Service List.

## SERVICE LIST

Alexander J. Taylor, Esq.
Sulaiman Law Group, Ltd
2500 South Highland Avenue, Suite 200
Lombard, IL 60148
Telephone: (331) 272-1942
Fax: (630) 575-8188
ataylor@sulaimanlaw.com

*Counsel for Plaintiff*

*Via CM/ECF*